## SARAH S. SHERWOOD *vs*. JESSUP SHERWOOD.

The act of June 22, 1849, provides that all personal estate which shall thereafter accrue during coverture to any married man in right of his wife by bequest or distribution to her, shall vest in him in trust for the use of the wife. The act of June 12, 1855, extends the provisions of this act to *all personal property* owned by any married woman at the time of her marriage. Held, that choses in action of the wife were embraced by the latter act.

Where a husband had been required by his wife, under a provision of the above acts, to give bond to the judge of probate for the faithful discharge of his duty as trustee of her personal property, and had brought a bill in equity to compel the wife to deliver up to him her personal property, describing in the bill the property withheld, and the court found that she had such property which she refused to deliver up, and made a decree that she should deliver up *all* her personal property, it was held that the decree was not erroneous in not excepting in terms her paraphernalia, but that it was to be construed as intending only the personal property which had been described in the bill and decree.

The court in decreeing that she should deliver up her personal property, was not bound to require the husband to make provision for her support out of it. If he should refuse to so apply it, she would have adequate remedy at law, both on his bond, and by application to the court of probate for his removal.

And if the court would have had power to require the husband to make such provision, yet it would have been a matter of discretion with the court whether to require it, and therefore a matter of which error would not have been predicable.

Sherwood *v.* Sherwood.

Held, that the declaration of the husband made to the wife before marriage, that he had property enough of his own, and should not call on her for any part of hers, did not estop him from claiming the possession of her property as trustee, even though the declaration was one of the inducements to the marriage.

The court decreed that the wife should deliver up her personal property to the husband on or before a certain day named, and should be committed to prison if she failed to do so, until she complied with the order; *and directed the sheriff in that case to commit her to prison.* Held, that this part of the decree was erroneous. It is indispensable that, in such a case, a positive finding should be made by the court that a respondent has in fact disobeyed the order of the court, before an order of committal shall be made, and that the committal should be only on a mittimus setting forth such finding.

The decree being valid in other respects was reversed in respect to the order of committal and affirmed for the residue.

WRIT of error, to reverse a decree of the superior court upon a bill in equity brought by the defendant in error, against the plaintiff in error, who was his wife. The material allegations of the bill were as follows :—

That on the 20th of January, 1858, he was lawfully married to the respondent, and had ever since faithfully performed all the duties incumbent upon him as her husband, and that he had never received or used any of her moneys or estate, nor demanded the rents or income thereof, until after the commencement by her of certain proceedings described; that the respondent, on the 31st of October, 1860, brought her petition to the court of probate, alleging that she was possessed of a large amount of personal estate in her own right, and praying the court to require the present petitioner to give bonds with surety for the faithful performance of his trust, as trustee under the statute, of the estate so owned by her; that the court of probate ordered the petitioner to give bonds with surety in the sum of $6,000, with which order the petitioner complied and gave bonds as required; that it was now not only his right but his duty to take the care and management of her estate, and devote the income of the same to the purposes provided by statute in such cases; that the respondent had ever since refused to disclose to the petitioner where her personal estate was and in what it consisted, although he had often requested her to disclose and to deliver the same to him; that on the hearing before the probate court she had stated under oath

Sherwood v. Sherwood.

that she had in notes and stock at least $5,000, and that she had declared and the petitioner believed that she had personal estate in notes, bonds and stocks, to the amount of $10,000 ; that all said personal estate was wholly beyond his control; that he feared and had good reason to believe it might be lost or squandered, and he subjected to great loss thereby, both in the loss of the income thereof, and also on his bond ; and praying that the respondent might be ordered to appear before the court and disclose on oath who held said estate and of what it consisted, and be ordered to deliver up to the petitioner all notes, bonds, certificates of stock and other evidences of said estate, that he might have the custody and management of the same.

The respondent filed an answer and cross-bill, the material parts of which were as follows :—

That at the time of her intermarriage with the petitioner she owned, and still owned in her own right, a farm of about one hundred acres, on which she now resided, and of which more than half was then and ever since had remained almost wholly unproductive ;. that she had then on the farm, and there were still thereon, a few cattle, consisting of cows and a yoke of oxen of little value, and a few farming utensils and household furniture sufficient only for her own use in housekeeping, the use of which was necessary to enable her to obtain means of subsistence ; that there was due to her, or to others for her benefit, by divers notes of various persons, several sums of money, amounting in the whole to about $1,800, the interest upon which had been punctually paid to her upon most of the notes until the present year ; that since her marriage she had been compelled to manage the farm herself, by reason of the indolence and incapacity of the petitioner, employing workmen and paying for their services out of the proceeds of the farm and from her other income ; that she had no other property or means of subsistence, and that the income of the whole was barely sufficient to afford her a living ; that from the time of their marriage the petitioner had lived at her house, having with him during a portion of the time a child of his by a former wife, and that she had furnished support to both ; that the petitioner was now and ever

had been since their marriage utterly insolvent, had no means or disposition to provide for her support, and was utterly unable to maintain her in a respectable position, and during all the time had provided for her no support or maintenance whatever; that she had paid him money at different times upon his promise to repay it, but that he had never repaid or accounted for it, but had as she believed wasted it, and that it was wholly lost to her, and that he had at different times taken and applied to uses other than the support of his family portions of the proceeds of the farm, although the same was needed by her for her own support and to defray the expenses of cultivating the farm; that she apprehended and had good cause to believe that if he obtained possession of her notes and of the income thereof, he would expend the same otherwise than in the support of the respondent and her family, and that she would thereby be deprived of a comfortable and respectable maintenance. She therefore prayed that the court would settle the whole of the income of the money at interest and of the farm upon her during the continuance of the marriage relation and permit her to receive the same, and that the petitioner might be forever enjoined against collecting or receiving the notes or the interest thereon.

The court upon the bill and cross-bill found the following facts:—

The petitioner, on the 20th of January, 1858, was married to the respondent, and the marriage relation still continues. The respondent was at the time and ever since has been the owner in her own right of a farm with a dwelling house and other buildings thereon, on which the parties reside, and which is occupied by the petitioner. She is also possessed of live stock, farming utensils and other articles of personal property included in an inventory annexed to the finding, and also of certain promissory notes against solvent parties, the principal of which amounts to $1,848, on which are now due considerable arrears of interest, and which are also included in said inventory; all which notes have been held by her since said marriage, and have not been legally reduced to possession by the petitioner. The petitioner previously to his marriage was

the owner of real estate of the value of $7,000 and in easy pecuniary circumstances, and then had reason to expect to be able to preserve a competence through life, which real estate he afterwards, a short time before the marriage, sold for more than the sum named. At the time of the marriage and for some time subsequently he honestly and reasonably supposed himself to be worth that amount independently of the respondent's estate, but by the fraud of the parties with whom he dealt in the disposition of his real estate he lost the whole and became insolvent.

Previously to the marriage, and while it was in contemplation between the parties, the petitioner in good faith represented to the respondent that he had property of his own sufficient for his maintenance and should call for none of hers, and this was the expectation of both parties, but the respondent subsequently to the marriage and after the petitioner had lost his property, admitted his right to act as her trustee under the laws of this state, and expressly recognized him as such.

Since the marriage the petitioner has faithfully labored upon the farm of the respondent, and has received in money from her $238, which he promised to refund but has not been able to do so, and has also received from time to time small sums from the avails of the produce of the farm which he has expended to satisfy his necessary wants.

The respondent on the 31st of October, 1860, brought her petition to the probate court for the district of Fairfield, within which both parties resided, alleging that she was the owner of a large amount of personal estate in her own right, and praying the court to require the petitioner to give bond with surety for the faithful performance of his trust as trustee of her personal estate, and the petitioner was required by the court to give and did give such bond with surety in the sum of $6,000. Previously thereto he had never asked for, or in any way attempted to collect, any portion of the income, rents or profits of the personal estate of the respondent, or attempted to take into his custody any of the promissory notes or evidences of her personal estate. After the bringing of her petition to the probate court down to the hearing of the present cause, the

respondent has refused to inform the petitioner as her trustee what notes and other personal estate she owned, or to give him any information respecting the same, or from whom or in what amounts the income therefrom was due, or to deliver the notes to him or to permit him to take and hold the same as trustee, or to collect or receive the interest therefrom, although requested by the petitioner after he had given bond as her trustee; and the respondent since that time has forbidden some of the makers of the notes to pay the interest due thereon to the petitioner as her trustee and has thereby prevented their doing so.

On the trial the respondent offered her own evidence to prove the declaration of the petitioner, made prior to the marriage and while it was in contemplation by the parties, that he had property enough of his own and should not call on the respondent for any part of hers, and claimed that this representation of the petitioner was a prominent inducement to the marriage; to the admission of which the petitioner objected. The court admitted the evidence for all other purposes than that of showing an inducement to the marriage, but for that purpose excluded it.

The court found that the petitioner was entitled to the relief prayed for, and decreed as follows :—" That the cross-bill of the respondent be dismissed, and that the respondent be and she hereby is commanded to deliver to the petitioner, on or before the 10th day of November next, all the notes and other evidences of her personal estate, and all personal property owned by her in her own right, except the sum of seventy-five dollars, which she is authorized to reserve to defray the expense of defending against the petition in this cause. And in case of the failure of the respondent to perform and comply with the above order, it is hereby ordered and decreed that she be committed to the common jail at Bridgeport until she shall comply with the same ; and the sheriff of the county of Fairfield or his deputy are by authority of the state of Connecticut hereby commanded to commit her to said jail till she shall so comply with said order."

From this decree the respondent brought the present writ of error, assigning the following errors :—

1. That the choses in action described in the petition never vested in or became the property of the petitioner as trustee, and that he has not as such trustee or husband any right or title thereto.

2. That the cross-bill of the respondent should not have been dismissed but the prayer thereof should have been granted, for the facts alleged therein and found by the court required of the court to order a suitable provision to be made for her support before she should be compelled to surrender her choses in action and other personal estate.

3. That the court erred in rejecting the evidence offered by the respondent for the purpose in the decree specified; and also in not deciding that the petitioner was estopped by his agreement and declaration that he would never call for or demand any of the property of the respondent.

4. That the decree is erroneous in that it requires the respondent to deliver to the petitioner all her notes and other evidences of her personal estate, and all personal property owned by her in her own right, without excepting her paraphernalia and private personal effects, or property of which other persons might be trustees.

5. That the decree is also erroneous and void in that it orders the respondent to be committed to the common jail, and the sheriff and his deputy are in and by the same decree commanded to commit her to the common jail, there to remain until she shall comply with said order, although her failure to comply with the same should be involuntary on her part and compelled by causes beyond her control, and without an opportunity to be heard before the court and to render an excuse for such failure, or to show a compliance with said order and to show cause why she should not be imprisoned.

*Hawley* and *Sturges*, for the plaintiff in error.

1. The order of the superior court for the delivery of the property in question to the husband, is based upon the finding of the court that he was entitled to the possession as trustee,

had demanded it in that character, and that his wife had refused to deliver it. But the choses in action belonging to Mrs. Sherwood at the time of her marriage did not vest in the husband as trustee. Whatever property of the wife he acquired in that capacity he acquired by virtue of the act of 1855, relating to the property of married women. That act is general in its terms, and merely extends the provisions of the act of 1849 to property not originally embraced by it. Neither act professes to vest in the husband as trustee any property which did not vest in him by the common law upon marriage, but both limit and qualify the interest of the husband in such property, which at common law was absolute. They merely make him hold as trustee what at common law he would have held in his own right. Very clearly no property in the choses in action of the wife vested at common law in the husband by the marriage.

2. The superior court should have made a provision for the support of the wife from the income of the estate, before it compelled her to surrender that estate to her husband. Equity will always provide for the support of the wife in any bill brought by the husband to get possession of her estate. 2 Story Eq. Jur., §§ 1405, 1408, 1412, 1414; 2 Kent Com., 117; *Scott* v. *Spashett*, 9 Eng. L. & Eq., 265.

3. The evidence offered and rejected by the court should have been received. The declaration and agreement of the husband that he would never call for or use any of the property of his wife, estopped him from demanding it of her, if she relied upon that declaration and agreement. The effect of the testimony rejected was to show that reliance. In marrying him upon the inducement of that representation she relied upon it and acted upon that reliance. *Barrow* v. *Barrow*, 31 Eng. L. & Eq., 241; *West* v. *Howard*, 20 Conn., 581; *Charles* v. *Charles*, 8 Gratt., 486; *Flower* v. *Kent*, Brayt., 238; 2 Story Eq. Jur., § 770; *Withy* v. *Cottle*, 1 Sim. & Stu., 174; 2 Powell on Cont., 547, 548, note.

4. The order of the court requiring the wife to deliver her property to the husband as trustee, is erroneous, as it relates to the personal chattels of the wife. It requires her to deliver

Sherwood *v.* Sherwood.

all personal property owned by her in her own right. This certainly embraces, if it does not exclusively intend, her sole and separate estate ; as well that of which other persons were trustees, as that of which her husband was trustee. It also embraces her paraphernalia, personal ornaments and wearing apparel, the use of which belongs exclusively to her and which is therefore her separate estate. *In the matter of Grant*, 2 Story, 312; 1 Wms. Exrs., 649 ; 2 Bla. Com., 436.

5. The order of the court directing the imprisonment of Mrs. Sherwood is utterly void. The precept or warrant directing that imprisonment is not an execution authorized by the statute relating to courts of equity. The original proceeding is in the nature of a forfeiture to compel the specific performance of a contract. Story's Confl. of Laws, §§ 161, 187, note 3. Marriage is a gift to the husband of the chattels of the wife. This is implied in every contract of marriage. Imprisonment by virtue of an execution obtained in any proceeding founded on contract is prohibited by law. Regarding the proceeding as one to compel the specific performance of a contract, the contract which in ordinary cases is implied is repelled in this case by the special agreement entered into by the parties before the marriage. But if this is not so, the order and warrant for imprisonment are a proceeding *in pœnam*, as for a contempt of court. Here there is a criminal proceeding, a judgment and sentence pronounced, and a warrant of execution issued, a month or more before any offence committed, while it leaves it to the plaintiff in the petition to determine when, for what, and how long, the power of imprisonment shall be exercised. This is a criminal proceeding, and a willful disobedience must be shown before an attachment can issue. *Dodington* v. *Hudson*, 1 Bing., 410 ; *Swinfen* v. *Swinfen*, 18 Com. Bench, 504 ; *Ex parte Kinning*, 4 Mann. Grang. & Scott, 507 ; *Green* v. *Elgie*, 5 Ad. & El., *N. S.*, 99 ; *Van Sandau* v. *Turner*, 6 id., 783 ; *Jackson* v. *Smith*, 5 Johns., 115 ; 2 Hilliard on Torts, 185 ; *State* v. *Mathews*, 37 N. Hamp., 450 ; *Ex parte Langdon*, 25 Verm., 680 ; 2 Arch. Prac., 297 ; 4 Bla. Com., 289 ; Hawk. P. C., 213.

6. It is claimed that Mrs. Sherwood is estopped from deny-

ing the right of her husband to the possession of her property as trustee, by her recognition of him as such in her application to the probate court. But a married woman is never estopped by her acts. Even her own contracts, except where made in certain methods authorized by statute, as where she conveys her land with her husband, do not bind her. And the averments of a party in his pleadings in another case do not operate upon him as an estoppel, but only as evidence. They are merely the party's admissions, and are never conclusive upon him. *Robbins* v. *Wolcott,* 28 Conn., 397, 408; 1 Greenl. Ev., § 212.

*Loomis* and *Seeley,* for the defendant in error.

1. The petitioner as trustee was entitled to the possession of the choses in action of the wife. The act of 1849, by which the husband was first made trustee of the personal property of the wife, was limited by its terms to property *accruing to the husband* in right of his wife, and so accruing *during coverture.* The act of 1855 extends the provisions of that act to *all property* owned by the wife at the time of the marriage. Her choses in action clearly fall within this comprehensive term, while there is the same reason for protecting her property of this character, which the husband could at any time reduce to possession, as property of any other kind.

2. The court did not err in refusing to require the husband to make provision for the wife's support out of the property. She was already protected by the heavy bond which upon her application he had been required to give. In obtaining the property as trustee he acquired no right to dispose of it for his own benefit, but was compelled to hold and manage it as her trustee.

3. The court properly ruled out the declarations of the husband that he should not want to use her property as constituting an inducement to the marriage. The answer does not allege the fact of such declarations, and without such an averment they could not be admitted in proof. *Shelton* v. *Alcox,* 11 Conn., 240. Even if admitted it would have been no defense against his right to the possession of her property as

trustee. He was doing merely his duty as trustee in seeking to get possession of the property for the management of which he had now become responsible. Besides, as she had by her application to the court of probate recognized him as trustee and compelled him to give bond as such, she was estopped from now denying his character and rights as such trustee. But even if the declarations had been admitted they could not have estopped the petitioner from claiming his rights, even though he claimed them voluntarily and under no such necessity as exists here. A mere declaration before marriage that a husband will not claim his rights as husband, even though it be an inducement to the marriage, can not estop the husband from claiming them. Here the declaration was not such an one as in any case would constitute an estoppel. *Kinney* v. *Farnsworth*, 17 Conn., 355.

4. The order of the court requiring the respondent to deliver all her personal property to the petitioner is not erroneous by reason of its omission to except her paraphernalia. The order is to be construed reasonably and in connection with the pleadings and the finding, and by the latter and the inventory referred to, it is sufficiently clear that no other property was intended except that previously described. Besides, it does not appear that the respondent had any other property to which it could refer.

5. The decree of the court commanding the imprisonment of the respondent if she failed to deliver up the property as ordered, is not erroneous. The court has power to enforce its decrees "in any manner proper for a court of equity." Rev. Stat., tit. 12, § 1. The order in this case is essentially like that in the case of *Lyon* v. *Lyon*, 21 Conn., 185. See note of the reporter on page 199.

BUTLER, J. With one exception the errors assigned upon the record are not manifest.

1. It is assigned for error in the first place that the facts alleged in the bill do not justify the decree, for that the choses in action therein described, consisting of notes due and paya-

ble to the wife and owned by her at the time of the marriage, did not vest in the husband as trustee.

It must be conceded that the bill is founded on a claim of title to such notes as trustee, and such title must appear ; that at common law no such title would accrue by force of the marriage ; and that such title could not accrue to the plaintiff at all unless by force of the statute of 1855.

That statute was enacted before the marriage took place, and is applicable to it ; and we think it very clear on the facts averred and found, that such title accrued to the petitioner by force of it.

Like other statutes to which the ordinary rules of construction are applicable, the attention of the General Assembly must be ascertained from the language used, unless explained and qualified by the object and purpose of the law. The language is simple and comprehensive, and all that is material of it is— " that the several provisions of the act of 1849, relative to the property and estate of married women, be extended and applied to all property owned by any woman previous to the time of her marriage." The principal provision in the act of 1849 was, that property accruing to the husband during coverture, in right of his wife, should vest in him as trustee. The provision in that act was limited to property accruing during coverture. It was the purpose of the legislature to extend the provision to other property. What property ? The plaintiff in error says to property owned by her which by force of the marriage vested absolutely in the husband, and that only. The law says " *all* property owned by her before her marriage." This language alone considered necessarily includes her choses in action ; and we are pointed to nothing, and discover nothing in the act, or the object and purpose of it, which indicate the intent claimed. On the contrary the use of the language " owned by her before marriage," instead of the language " accruing to him," used in the original act, is clearly indicative of an intention to include such property. And looking to the purpose of the law, we find that it was to protect the property of the wife against the husband, as well as his creditors, and secure the same for the support of her

and her children ; and choses in action which he could immediately after the marriage vest in himself by reducing them to possession, were clearly within the object of the law. The language therefore being peculiar and unequivocal, and the object and purpose of the law in harmony with it, there is nothing to indicate an intention variant from its plain import, and to justify the construction claimed.

2. The plaintiff in error insists in the second place that the court erred in not requiring the petitioner to make provision for her support before directing her to deliver the property. We think the court would have erred if it had attempted to do so. The respondent had and has adequate remedy at law, as well upon the bond she had procured for her safety, as by application to the court of probate for his removal, if he failed to apply the income to her support. The court therefore could not make the supposed order without contravening the prohibition of an express statute and the well settled rules of equity. Moreover, if the court possessed the power to make such an order, the exercise of it was a matter of discretion and not of absolute duty, and therefore not assignable for error. And we may properly add that as she was otherwise abundantly secured the discretion was properly exercised.

3. The third error assigned is not manifest. We are not able to perceive how a man can be estopped against the exercise of a marital right by a mere declaration made before marriage that he should not want to exercise that right, although it may have been one of the inducements to the marriage, (for it certainly could not have been the only one,) and was true when made and for a considerable period after the marriage. As a rule, even ante-nuptial *agreements* in restraint of the exercise of marital rights, are avoided by the marriage, unless of a nature to be saved and in fact saved by the intervention of as trustee. 1 Swift Dig., 28, 29. Moreover no foundation was laid by the averments of the cross-bill for the introduction of the testimony, and it was properly rejected.

4. Nor do we discover any error in the order of the court requiring the petitioner to deliver her choses in action to her

husband. The decree must have a reasonable construction, and all parts be construed together. The court went into a hearing in respect to the property withheld. No claim was made in the petition or on that hearing for paraphernalia, and the court found what other property she had. Although the order to deliver is general, the property so found to be in her possession was obviously intended and no other. And so the decree was doubtless understood by all parties at the time. Besides, if the rule of construction claimed is to be applied to the decree it must be to the law also, and as the former is no broader in its terms than the latter it can not be impeached for error.

5. But that part of the decree which directs the sheriff to commit the respondent to prison, in the event she failed to comply with the order to deliver the property to her husband, is erroneous and must be reversed. It is said to be in conformity with an occasional and hitherto unquestioned practice ; but it is not in conformity with the analogies or policy of our law, and is liable to abuse. It does not conform to the analogies of the law, for although the court had power to imprison for the purpose of enforcing the decree, some finding or judgment by the court in such a case, that the party had in fact disobeyed it, and was in contempt, either on motion or by process of attachment, was essential to regularity, and required by precedent and the safety of the citizen. It does not conform to the policy of the law, for that requires that a mittimus, setting forth some actual and *absolute* judgment or finding or command as the ground of the imprisonment, shall accompany it. Here there was nothing of the kind directed, and no evidence which could properly be regarded that the contingency upon which the respondent was to be committed had occurred. The sheriff certified to a demand and refusal ; but the duty was not to be performed and the delivery made to him, or upon his requirement, but to the petitioner, nor does the decree contemplate a demand by him ; and in making service in obedience to the order, upon a fair construction of it, it was sufficient for the sheriff to take the word of the party, for no one but the party was authorized to judge ; and indeed his

Sherwood *v.* Sherwood.

authority, if the court could delegate any to him, was conferred not expressly but by implication.

And such an order is liable to abuse, for a person may be arrested and imprisoned under it at the will of the opposite party for an apparent failure to comply, when there has been a substantial though not literal compliance ; or where compliance has been prevented by the party interested ; or where something has occurred subsequently to the making of the order to prevent compliance and render it impossible, or to excuse it if the party could be heard. Obviously therefore, such an order leaves the respondent too much at the mercy of the other party, and in respect to the vital right of personal liberty.

The case of *Lyon* v. *Lyon*, 21 Conn., 185, cited by the petitioner, is not in point. That was a *writ* of " *ne-exeat*," and the contingent command to the sheriff to imprison in the event security in the nature of bail was not given by Lyon, that he would not depart from the jurisdiction of the court, was a necessary part of such a writ, and justified by the necessity and peculiarity of the case, and furnishes no analogy for other proceedings where no such necessity exists.

But that part of the decree is entirely distinct from and independent of the other portions of it, and it may and should be reversed without disturbing the rest.

Judgment therefore must be rendered reversing so much of the decree as orders the sheriff to imprison the respondent on default of compliance with the order to deliver up the prescribed property, and affirming the residue.

In this opinion the other judges concurred.